IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03571-NRN

C.L.Y.,[1]

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

Defendant.

---

**OPINION AND ORDER**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

The government determined that Plaintiff C.L.Y. was not disabled for purposes of the Social Security Act. AR[2] 28. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). ECF No. 9.

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence. *See Krauser v.*

[1] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. ECF No. 10.

*Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011); *Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) ("If [plaintiff] is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence.").

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007).

If the correct legal standards were applied and substantial evidence supports the findings of the Commissioner, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for

reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## **Background**

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Plaintiff had the following severe impairments: intermittent explosive disorder, history of attention-deficit/hyperactivity disorder ("ADHD") and learning disorder, mild intellectual disorder, post-traumatic stress disorder ("PTSD"); and anxiety. AR 20.

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations (specifically, listings 12.05, 12.06, 12.08, 12.11, and 12.15). AR 20–22. As to Plaintiff's mental impairments, the ALJ concluded that Plaintiff had moderate limitations in the four areas of functioning, known as the "paragraph B" criteria.[4] AR 20. Because the mental impairments must result in at least one extreme or two marked limitations in a broad area of mental functioning to satisfy the paragraph B criteria, the ALJ determined that the severity of the Plaintiff's mental

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

[4] The four areas of mental functioning are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.

impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), 12.11 (neurodevelopmental disorders), and 12.15 (trauma- and stressor-related disorders). *Id.* Addressing Plaintiff's intellectual disorder, the ALJ concluded that listing 12.05's

> requirements are not met because the claimant has maintained work activity, although he was very vague on his job details, but he has been able to maintain jobs for periods of time. The claimant's greatest issue being in interaction with others, but this still is only at the moderate level. Moreover, although the claimant scored in the extremely low range on IQ testing, effort appears to have impacted these results and his intellectual disability was noted to be only mild. He is also able to perform numerous activities of daily living, including, personal care, preparing meals, shopping, using public transportation, and interacting with others.

AR 22 (internal citations to the record omitted).

After concluding that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple instructions that can be learned in thirty days or less and can sustain concentration, persistence, and pace to these simple instructions for two-hour intervals with normal breaks; he can adapt to occasional workplace changes; he can accept instructions from supervisors, but cannot work in tandem with others; and he must avoid direct interaction with the general public.

*Id.*

After noting that Plaintiff had no past relevant work and a limited education, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform," including machine packager, industrial

cleaner, and stores laborer. AR 28. Accordingly, Plaintiff was deemed not to have been under a disability from April 27, 2023, the date of the application, through April 27, 2025, the date of the decision. AR 28.

## **Analysis**

Plaintiff raises one issue on appeal: "The ALJ properly found that State agency determinations of 'insufficient evidence' were not medical opinions, but nevertheless erred due to the lack of any medical opinion in the record to guide her analysis, ultimately yielding a decision that is not supported by substantial evidence." ECF No. 11 at 2.

The ALJ reviewed the evaluations of state agency physicians Sara Sexton, Psy.D., and Mark Suyeishi, Psy.D., who both concluded that there was insufficient evidence to assess the case because Plaintiff failed to cooperate and did not complete necessary forms. *See* AR 53, 60. The ALJ correctly found that such statements cannot constitute medical opinions because they do not "reflect judgments about the nature and severity of the claimant's impairment(s), including symptoms, diagnosis, and prognosis, what the claimant can still do despite impairment(s), and his physical or mental restrictions." AR 26 (quoting 20 CFR § 416.927).

The ALJ then addressed a 2024 neuropsychological report from Kelley Quirk, Ph.D., who assessed the claimant with intellectual disability, mild; generalized anxiety disorder; and PTSD. *See* AR 486–99. As the ALJ summarized,

> Dr. Quirk provided various recommendations for the claimant related to overall functioning, mental health, social skills, parenting skills, and interventions. The undersigned finds that this is partially persuasive, supported by the objective medical evidence, and consistent with the evidence from all sources. The examination findings are largely consistent with the claimant's reported symptoms and functional limitations, with an

> assessment of only mild intellectual limitations. However, this opinion lacks a sufficient opinion regarding the claimant's work related functional abilities and limitations.

AR 26–27.

The ALJ concluded:

> Given the claimant's history of trauma and attention, concentration, and learning difficulties, intellectual disorder, issues with anger and impulse control, difficulty interacting with others, mood lability, and anxiety, the undersigned determined that the nonexertional simple work, concentration, persistence, and pace for two-hour intervals, occasional adaption, and social interaction limitations, as set forth in the above residual functional capacity, are warranted. However, further limitations are not warranted. The medical evidence as a whole shows minimal, routine, conservative treatment with largely normal to mild examination findings and improvement with treatment. Moreover, the claimant is able to engage in numerous significant activities of daily living, including his abilities to perform household chores and personal care, prepare meals, go grocery shopping, use public transportation, and attend appointments.

AR 27 (citations to the record omitted).

Plaintiff argues that the ALJ should have obtained either a consultative examination or testimony from a medical expert, and was not permitted to base her RFC on a record containing no medical source opinions.

Judge Nina Y. Wang recently addressed a nearly identical set of circumstances. In *S.E.S. v. Bisignano*, No. 24-cv-03178-NYW, 2026 WL 1090953 (D. Colo. Apr. 22, 2026), the ALJ formulated an RFC based only on the plaintiff's hearing testimony and medical records after the state agency consultants did not provide opinions because the plaintiff "had not returned certain forms to them or otherwise responded to their attempts to contact him, which prevented them from completing their evaluations." 2026 WL 1090953, at *2. The plaintiff argued, as Plaintiff does here, that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to fully develop the record by obtaining a medical opinion from a consultative examination, and

instead substituted his own non-medical judgment. *Id.* at *3. Judge Wang rejected that contention. She explained:

> Plaintiff is correct that an ALJ has a duty to exercise "reasonable good judgment" to "fully and fairly develop[ ] the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (quotation omitted). When a party is represented, however, "the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.* at 1167. Thus, if counsel fails to request a consultative examination, the ALJ has no duty to order one unless the need for such examination is "clearly established in the record." *Id.* at 1168. A consultative examination may be required where the medical evidence is conflicting or inconclusive, or where additional tests are needed to explain a diagnosis. *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (citing *Hawkins*, 113 F.3d at 1164) (further citations omitted). "But there is no need for a consultative examination when the ALJ has enough information to make a disability determination." *Id.* (citing *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008)). And if the need for a consultative examination is not clearly established, the ALJ's duty to develop the record "does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).

*Id.*

Here, Plaintiff's counsel not only *did not* request a request a consultative exam, but he also explicitly reported to the ALJ his belief that "the record, as it stands, is very, very strong" during the December 23, 2024 hearing. AR 38. Thus, "the fact that no consultative physician opinions exist is solely attributable to Plaintiff—due to both his failure to respond to [the two state-agency physician consultants'] contact attempts and his counsel's failure to request another examination before the ALJ issued his decision." *S.E.S*, 2026 WL 1090953, at *4.

Nor has Plaintiff demonstrated that the need for a consultative examination was clearly established in the record. Plaintiff claims that the ALJ erred by crafting an RFC based on a record containing no medical source opinion. ECF No. 11 at 7. But "the ALJ

did not need specific medical opinions at step four because a patient's RFC is an administrative, not medical, determination." *S.E.S*, 2026 WL 1090953, at *3. The regulations do not require that an ALJ adopt any particular medical opinion in order to formulate an RFC. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Instead, it is the ALJ's task, as the finder of fact, to weigh the evidence and come to a conclusion. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."). The question on review is whether the ALJ's conclusion is supported by substantial evidence. *See, e.g.*, *Colby V.W. v. Kijazaki*, No. 2:21-cv-00622-JCB, 2022 WL 2953909, at *3–4 (D. Utah July 26, 2022) (affirming ALJ's RFC assessment formulated from medical records, including treatment notes, even though no medical opinions were on point); *Sardono v. Colvin*, No. 15-cv-00291-W, 2016 WL 1618271, at *4–5 (W.D. Okla. Mar. 11, 2016) (rejecting argument that ALJ should have ordered a post-surgery consultative examination where ALJ had sufficient information from pre-surgery examinations and post-surgery treatment records to determine claimant's RFC), *recommendation adopted*, 2016 WL 1599497 (W.D. Okla. Apr. 20, 2016).

Substantial evidence supports the ALJ's RFC determination in this case. The ALJ reviewed Plaintiff's medical records, which generally showed "minimal, routine, conservative treatment with largely normal to mild examination findings and improvement with treatment." AR 27. The ALJ also noted that Plaintiff can perform numerous significant activities of daily living. *Id.* The ALJ further cited Plaintiff's own

testimony that he is able to work part-time if he does not have contact with others. AR 24, 45. This constitutes substantial evidence and is sufficient for a reasonable mind to accept that Plaintiff retains the capacity to perform the work identified in the ALJ's decision.

Plaintiff maintains that Dr. Quirk's report—which documents hopelessness, distractibility, forgetfulness, difficulty focusing, hypervigilance, a heightened startle response, intrusive thoughts, and anxiety symptoms; and which was not reviewed by the state agency physician consultants—"supported a finding of disabling mental restrictions" and therefore triggered the need for a consultative exam. This is unconvincing for several reasons. First, the ALJ did not disregard Dr. Quirk's report. She reviewed its assessments and determined that they were consistent with medical records and Plaintiff's reported symptoms and functional limitations. AR 26–27. The ALJ simply noted that Dr. Quirk did not address Plaintiff's work-related functional abilities. AR 27. This makes sense because Dr. Quirk did not examine Plaintiff with work-related functional abilities and limitations in mind. Rather, Plaintiff was referred to Dr. Quirk for a neuropsychological evaluation because the Weld County Department of Human Services was contacted with concerns that Plaintiff's child was not being adequately cared for. *See* AR 486. In any event, far from supporting a "finding of disabling mental restrictions," Dr. Quirk's diagnoses of Plaintiff—that he suffers from a mild intellectual disability, generalized anxiety disorder, and PTSD—are reflected in the ALJ's decision and accounted for in the RFC. In other words, Plaintiff has not shown that this report conflicted with other evidence in the record or was inconclusive such that the need for an additional examination was clearly established.

Thus, the Court finds that (1) the medical records and hearing testimony provided substantial evidence to support the ALJ's RFC determination, and (2) there is no conflicting or inconclusive medical evidence that clearly established the need for additional consultative examination. *See Hawkins*, 113 F.3d at 1168. To again quote Judge Wang:

> [N]o RFC-specific medical opinions were required. And because no such opinions existed in the record, the ALJ properly relied on available evidence to determine Plaintiff's RFC as an administrative matter. That distinguishes this case from cases where an ALJ improperly disregarded a medical opinion or made a medical determination by substituting his own judgment for that of a medical expert. . . . Given the substantial evidence supporting the ALJ's decision, Plaintiff cannot obtain a second bite at the apple by invoking the ALJ's duty to develop the record.

*S.E.S.*, 2026 WL 1090953, at *4.

**<u>Conclusion</u>**

For the reasons set forth above, the Commissioner's decision is AFFIRMED. Plaintiff's Complaint, ECF No. 1, is DISMISSED.

Dated this 24th day of August, 2026.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge